IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JACKIE DUTTON, Administrator
of the Estate of Thomas Dutton,
deceased,**

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**                              No. 04-CV-0103-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

This matter comes before the Court on Plaintiff's amended motion to bar defense expert Bernard C. Camins, M.D., from rendering opinion that Streptococcus Pyogenes caused Thomas Dutton's death (Doc. 98). Based on the following, the Court denies Plaintiff's motion.

This case is a medical malpractice action brought pursuant to the Federal Tort Claims Act. ("FTCA"). Plaintiff alleges that plaintiff decedent's death was proximately caused by the negligence of Dr. Eladio Chatto, an employee of a deemed community health center pursuant to **42 U.S.C. § 233**.

On August 4, 1999, Thomas Dutton ("Dutton") was 54 years old. On

that date Dutton had a tooth extracted by a dentist named Dr. Jammie K. Stricklin. Later that same date, Dutton was taken by ambulance to Hardin County General Hospital in Rosiclare, Illinois.

Dutton arrived at the emergency room at approximately 4:40 PM on August 4, 1999. Dutton was treated at the emergency room by Dr. Chatto. Dutton died at the emergency room at 6:35 PM on August 4, 1999. An autopsy was later performed on Dutton by Dr. John Heidingsfelder.

At the time of his treatment of Dutton, Dr. Chatto was acting within the scope of his employment as a physician for a community health center "deemed" pursuant to **42 U.S.C. § 233**.

## II. Analysis

Plaintiff contends that Dr. Bernard Camins' opinion that Dutton's death was "secondary to Streptococcus pyogenes soft tissue infection is not admissible because his opinion has no factual foundation and fails under the test for scientific reliability as set forth in ***Daubert***. Specifically, Plaintiff claims that since Streptococcus pyogenes was never cultured from a blood test there is no factual foundation for Dr. Camins' opinion.

The admissibility of expert testimony in federal court proceedings is governed by **FEDERAL RULE OF CIVIL PROCEDURE 702**, as interpreted by the Supreme Court in ***Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)**. ***Daubert*** requires the trial judge perform a gatekeeping function with respect to

expert testimony. The trial judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." **Id. at 589**, an inquiry required also for technical and other specialized expert testimony. **See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)**. The Seventh Circuit, interpreting **Daubert**, has established that when evaluating the admissibility of the proffered testimony, district courts are to undertake a two-step inquiry:

> Daubert first "directs the district court to determine whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" Second, the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying."

**O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1106 (7th Cir. 1994) (quoting Porter v. Whitehall Labs., Inc., 9 F.3d 607, 613 (7th Cir. 1993)(citations omitted))**.

While the Supreme Court did "not presume to set out a definitive checklist or test," it did list several factors that should be considered including: (1) whether a scientific theory or technique has been or can be tested; (2) whether the scientific theory has been subjected to peer evaluation and publication; (3) the actual or potential error rate and existence of any standards controlling the technique's operation; and (4) whether the theory has been generally accepted in a particular

field. ***Daubert***, **509 U.S. at 595**. The test of reliability, however, is flexible and there is no requirement that the district judge consider each one of the factors when making an admissibility ruling. ***Id.*; *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535 (7th Cir. 2000)**.

The purpose of the rule in ***Daubert*** "was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded of their professional work." ***Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir.), *cert. denied*, 519 U.S. 819 (1996)**. **FEDERAL RULE OF EVIDENCE 703** explicitly permits reliance on material "reasonably relied upon by experts in the particular field forming opinions or inferences." **FED. R. EVID. 703**. "[Seventh Circuit] case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." ***Cooper v. Nelson*, 211 F.3d 1008, 1020 (7th Cir. 2000)**. An expert must be limited to opinion testimony in the area of expertise for which the proffering party can qualify the expert. ***Goodwin v. MTD Products, Inc.*, 232 F.3d 600 (7th Cir. 2000)**. Once qualified, expert can testify to his or her area of expertise, regardless of whether the expert is prepared to offer an opinion as to the ultimate issue. ***Smith v. Ford Motor Company*, 215 F.3d 713 (7th Cir. 2000)**.

Dr. Camins is board certified in Internal Medicine and the sub-speciality

of Infectious Diseases.[1]  Currently, he is a Clinical Instructor in the Infectious Diseases Division at Washington University School of Medicine, St. Louis, Missouri and an Associate Hospital Epidemiologist at Barnes-Jewish Hospital, St. Louis, Missouri.  Also, Camins holds Attending Physician positions at both Barnes-Jewish Hospital and Barnes-Jewish West County Hospital, St. Louis, Missouri.  He is also the Medical Director of the Antimicrobial Stewardship Program at Barnes-Jewish Hospital and the Medical Director of the Infection Control Program at Barnes-Jewish West County Hospital.[2]

Dr. Camins opines:

> The cause of Mr. Dutton's death is secondary to *Streptococcus pyogenes* soft tissue infection with complications of toxic shock syndrome.
> Mr. Dutton complained of not feeling well at least two days prior to his death.  His wife also reported his face being "puffy" while they were in St. Louis.  This is consistent with the prodrome of malaise that has been reported in patients prior to presentation to the hospital for *Streptococcus pyogenes* toxic shock syndrome (Mandell, Douglas, and Bennett's Principles and Practice of Infectious Diseases).  He presented with signs consistent with this illness – diaphoresis, nausea and vomiting, combativeness, hypotension, acute renal failure, disseminated intravascular coagulopathy, diffuse opacification of lung fields (adult respiratory distress syndrome), and metabolic acidosis.  Mr. Dutton had a blood glucose level of 1777 mg/dL, a bicarobonate level of 6.9, a creatinine 2.3mg/dL, and a prothrombin time that was elevated at 24.9, and thrombocytopenia (low platelets of 69,00 mm3) all consistent with severe infection. His throat was described as "friable and bled easily", which is consistent with an infection.  His lung exam revealed rales bilaterally and wheezing as opposed to no breath sounds on the left

---

[1] Camins is licensed to practice medicine in the states of Georgia and Missouri.

[2] Camins has many formal teaching contributions, lectureships and seminar invitations, and has served on various editorial review boards mostly relating to infectious diseases.  He has also served on several review boards pertaining to infectious diseases.

>side. 50% of patients with *Streptococcus pyogenes* toxic shock syndrome will present with combativeness. He also had undiagnosed diabetes and was taking Alleve, a non-steroidal anti-inflammatory drug which have been found to be risk factors for development of toxic shock syndrome. (Mandell, Douglas, and Bennett's Principles and Practice of Infectious Diseases). The mortality rate from *Streptococcus pyogenes* toxic shock syndrome is greater than 50%. Patients may have normal to high white counts and lower white counts is a predictor of poor outcome (Eriksson et al.). He meets the criteria for diagnosis but unfortunately, *Streptococcus pyogenes* was not cultured because pre-mortem cultures were not performed.

(Doc. 106, Dr. Camins' Expert Report).

The Court finds that Dr. Camins' testimony is sufficiently reliable and will assist the trier of the fact in understanding the evidence or determining a fact in issue, as required by **Daubert**. All of his proposed testimony relates to the facts at issue in the case. Dr. Camins lists numerous objective signs and subjective signs of infection and/or Streptococcus pyogenes. He further provides citations to medical authority to support his positions. He further states that Dutton met the criteria for diagnosis of Streptococcus pyogenes toxic shock syndrome, but that it was not cultured because pre-mortem cultures were not performed. Dr. Camins' methodology is acceptable under the gatekeeping requirements of **Daubert** and that his testimony is admissible. Any attack by Plaintiff as to the weight of Dr. Camins' testimony is a subject appropriate for cross examination.

### III. Conclusion

Accordingly, the Court **DENIES** Plaintiff's amended motion to bar defense expert Bernard C. Camins, M.D., from rendering opinion that Streptococcus Pyogenes caused Thomas Dutton's death (Doc. 98).

**IT IS SO ORDERED.**

Signed this 13th day of March, 2006.

/s/      David  RHerndon
**United States District Judge**